1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   TOWN & COUNTRY WEST, GP, et          No.  2:17-cv-02231-JAM-AC
     al.,

12
                     Plaintiffs,
13                                        **ORDER GRANTING DEFENDANT COUNTY
          v.                              OF SACRAMENTO, ROBIN RASMUSSEN
14                                        AND GREGORY STOWE'S MOTION TO
     THE COUNTY OF SACRAMENTO, et         DISMISS**
15   al.,

16                   Defendants.

17

18        Plaintiffs Town & Country West, GP ("the Partnership")and

19   Janak Mehtani ("Mehtani") allege Defendants the County of

20   Sacramento (the "County"), Robin Rasmussen ("Rasmussen"), Gregory

21   Stowe ("Stowe," collectively with Rasmussen and the County, the

22   "County Defendants"), and Amy Nygren ("Nygren") unlawfully

23   evicted them and their tenants from the mall property they own.

24   Plaintiffs allege Defendants used their failure to comply with

25   fire and safety codes as a pretext for racial and ethnic

26   discrimination.  The County Defendants move to dismiss all four

27   claims in the Complaint for failure to state a claim under

28   Federal Rule of Civil Procedure 12(b)(6).  <u>See</u> Mot., ECF No. 15.

1

Plaintiffs oppose.  See Opp., ECF No. 18.  For the following reasons, the Court grants the County Defendants' motion with leave to amend.[1]

## I.  FACTUAL BACKGROUND

The Partnership is a general partnership that owns the Town & Country West Mall (the "Mall") in Sacramento.  Compl., ECF No. 1, ¶ 2.  Mehtani is a psychiatrist from India, general partner of the Partnership, and Mall tenant with a medical clinic located on the second floor.  Id. ¶ 3.  The County employs Rasmussen, a building inspector, and Stowe, a code enforcement officer.  Id. ¶¶ 5-7.  Nygren works for the Sacramento Metropolitan Fire District (the "Fire District").  Id., Exh. 2; Mem., ECF No. 15-1, at 2.

On July 13, 2017, Nygren inspected vacant portions of the Partnership's Mall property and found two fire code violations, which were corrected later that day.  Compl. ¶¶ 22-23.  Four days later, on July 17, 2017, some of the County's employees, including Rasmussen, inspected the Shopping Mall.  Id. ¶¶ 25-26.  At Rasmussen's direction, the County issued several notices of violation ("NOV").  Id. ¶ 29.  Plaintiffs claim that, during this inspection, Rasmussen also angrily accused the Partnership employee Manzar Quyyum ("Quyyum") of performing unpermitted construction work, causing him to feel threatened and discriminated against because of his Pakistani nationality.  See id. ¶¶ 26-27.

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for March 27, 2018.  In deciding this motion, the Court takes as true all well-pleaded facts in the complaint.

The County continued its inspection and issued additional NOVs on July 18, 2017. Compl. ¶ 31-32. During the inspection, Stowe noticed a broken strut on the second-floor balcony railing that required evacuating the floor. Id. ¶ 34. When Mehtani was told to evacuate, he sought and was granted a delay in moving his psychiatric patients from the second floor office. Id. ¶ 38-39. Plaintiffs claim the NOVs and evacuation were continuing prejudice against Mehtani and Quyyum based on their Middle Eastern ethnicities and accents. Id. ¶ 40. Plaintiffs also allege that, during the inspection, Stowe repeatedly yelled at Quyyum because of his race and ethnicity. Id. ¶ 33.

The entire Mall (except for a post office) was evacuated after Nygren and the Fire District issued a written Correction Notice and ordered evacuation on July 19, 2017. Compl. ¶ 45, Ex. 2. When Quyyum went to the Fire District to emphasize the need to have tenants return to the building quickly so they would not permanently vacate, Nygren told him that the necessary permits could be issued over the counter. Id. ¶ 48. Plaintiffs allege that this led Quyyum to refrain from filing any administrative appeals regarding the NOVs and evacuations. Id. ¶ 48. Around the same time, the Partnership repaired or adjusted 15-16 sprinkler heads after discovering they were faulty, leading to the lifting of some of the evacuation orders. Id. ¶ 49-a.

In August 2017, the railing was sufficiently repaired and the appropriate permits were issued so that Mehtani was able to reopen his medical clinic and tenants could re-occupy the Mall. See Compl. ¶ 57-58. Because most of the tenants had walked away from their leases, however, the Partnership had to obtain new

3

1    tenant permits, even though the new tenants are identical to the

2    previous ones.  Id. ¶ 58-60.  Plaintiffs allege the County's

3    requirements have impeded their efforts to restore tenant

4    occupancy of the Mall, leading to a decrease in rental income and

5    the fair market value of the property.  See id. ¶¶ 61-62.

6                            II.   OPINION

7         A.   Procedural Due Process Under The Fourteenth Amendment

8         The County Defendants contend Plaintiffs' procedural due

9    process claim fails because there were procedures in place by

10   which Plaintiffs could have appealed the County Defendants'

11   decisions regarding the permitting of their property.  Mem. at 5-

12   6.  The Court agrees.

13        Procedural due process imposes constraints on governmental

14   decisions that deprive individuals of liberty or property

15   interests within the meaning of the Due Process Clause of the

16   Fifth or Fourteenth Amendment.  Mathews v. Eldridge, 424 U.S. 319

17   (1976).  Due process is flexible and calls for procedural

18   protections as the particular situation demands.  Id. (internal

19   citation and quotation marks omitted).  But the existence of an

20   adequate state remedy to redress property damage inflicted by

21   state officers precludes a finding of a constitutional

22   deprivation of property without due process of law.  Parratt v.

23   Taylor, 451 U.S. 527, 542 (1981), overruled on other grounds in

24   Daniels v. Williams, 474 U.S. 327, 328 (1986).

25        Plaintiffs argue that they have a valid due process claim

26   because there was no alternative appeal process for them to

27   participate in after the mall was shut down and evacuated.  Opp.

28   at 10.  But this argument ignores the procedures that even the

                                 4

Plaintiffs concede existed—"Based on that representation [by Nygren] to Manzar, the Plaintiffs justifiably and reasonably decided not to pursue any administrative appeals in connection with the NOVs issued by the Building Department." Compl. ¶ 48.[2] In addition, as the County Defendants point out, Plaintiffs do not explain why they could not have pursued an administrative appeal process while heeding Nygren's alleged statement. See Reply at 2. Because Plaintiffs had access to an administrative appeals process to redress the alleged harms giving rise to their due process claim, their procedural due process claim fails. See Parratt, 451 U.S. at 541.

B.   Denial Of Equal Protection

Plaintiffs contend Defendants violated Plaintiffs' equal protection rights because the Defendants were motivated by a spiteful effort to take everything from the Plaintiffs. See Opp. at 13-14. Plaintiffs assert this motivation is shown by Stowe yelling at Quyyum and Mehtani and there being no incidents at the Partnership's building before the immediate one. See id. The Court finds otherwise.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall deny to any person within its jurisdiction the equal protection of the laws and that all persons similarly situated should be treated alike. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985), superseded by statute on other grounds (internal citation and

---

[2] Plaintiffs have not attributed Nygren's alleged statement to the County and she is not a County employee. So the Court need not, and does not, analyze any liability on the part of the County for Nygren's alleged representation.

quotation marks omitted).  To state a claim for a violation of the Equal Protection Clause, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.  Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (citing Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)), overruled on other grounds by Galbraith v. Cty. of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).

Here, Plaintiffs have failed to allege any facts showing that the Partnership was uniquely discriminated against, rather than being treated like other commercial landlords with potentially harmful deficiencies on their properties. Plaintiffs claim in a conclusory manner that the County Defendants yelled at them and treated them differently because they and their employees are Middle Eastern and have Middle Eastern accents.  Opp. at 14-15.  But Plaintiffs have not alleged any specific facts indicating the racist motive they attribute to the County Defendants.  Plaintiffs cite Sioux City Bridge Co. v. Dakota County, Neb., 260 U.S. 441, 445 (1923) to support their argument.  Opp. at 13.  But that case involved clear numerical discrimination where the county assessed taxes against one company's property at 100 percent of its true value and against other companies at 55 percent of their true value. Sioux City Bridge Co., 260 U.S. at 445-46.  Plaintiffs have failed to allege similar numerical data or other specific facts showing the County Defendants have uniquely discriminated against them and violated their equal protection rights.  This claim is dismissed.

C. **Discrimination Based On Race And Ethnicity**

Plaintiff Mehtani contends that Defendants have violated the Equal Protection Clause and 42 U.S.C. §§ 1981 and 1983 by discriminating against him on the basis of race and ethnicity. See Compl. ¶¶ 82-92. The Complaint does not appear to contain any allegations of racial or ethnic discrimination against the Partnership and so the Court need not reach that issue. See id.

To show a violation of the Equal Protection Clause because of discrimination based on race or ethnicity, a plaintiff must factually allege discriminatory intent or purpose. Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977). Further, 42 U.S.C. § 1981 can be violated only by intentional discrimination. Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982).

This claim fails because Mehtani does not allege that the County Defendants made any comments indicating animus towards Indians, South Asians, or Middle Easterners. See Compl. Because Mehtani fails to allege any discriminatory intent or purpose, the Court dismisses his discrimination claim.

D. **Unlawful Search and Seizure**

The Partnership (Mehtani is not mentioned in this claim) claims the County Defendants violated its right to be free from unlawful search and seizure by searching the entire shopping mall without justification or consent and evicting Partnership's tenants. See Compl. ¶¶ 98-103. But consent is normally within the tenant's discretion and not the landlord's. See U.S. v. Warner, 843 F.2d 401, 403 (9th Cir. 1988). Given that the Complaint does not allege whether the Partnership's tenants

granted or denied consent to the County Defendants, the remaining allegations do not support a claim that the County Defendants violated  the Partnership's right to be free from an unlawful search.

Plaintiffs' claim against the County Defendants for unlawful seizure also fails because they have provided no authority suggesting that ordering all of the Partnership's tenants to temporarily vacate the premises until their safety could be assured constitutes an unlawful seizure.

Because Plaintiffs have failed to provide sufficient facts or legal authority to support an unlawful search and seizure claim against the County Defendants, it must also be dismissed.

E.   Leave to Amend

Courts dismissing claims under Federal Rule of Civil Procedure 12(b)(6) have discretion to permit amendment, and there is a strong presumption in favor of leave to amend.  Eminence Cap., LLC v. Aspeon, Inc., 316 F.3d 1048, 1051-52 (9th Cir. 2003).  "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment."  Id. at 1052 (internal citation omitted).

The Court is not convinced that further amendment would be futile and will give Plaintiffs another opportunity to try to plead legally sufficient claims against the County Defendants.

III.   SANCTIONS

The Court issued its Order re Filing Requirements ("Order") on October 25, 2017.  ECF No. 3-2.  The Order limits memoranda in support of and in opposition to motions to dismiss to fifteen

1    pages and reply memoranda in support of motions to dismiss to

2    five pages.  The Order also states that an attorney who exceeds

3    the page limits must pay monetary sanctions of $50.00 per page

4    and that the Court will not consider any arguments made past the

5    page limit.

6         Plaintiffs' opposition memorandum exceeds the page limit by

7    three pages.  The Court has not considered any arguments made

8    after page fifteen of the opposition brief.  The Court ORDERS

9    Plaintiffs' counsel to pay $150.00 in sanctions.

10        The County Defendants' reply memorandum exceeds the page

11   limit by two pages.  The Court has not considered any arguments

12   made after page five of the reply brief.  The Court ORDERS the

13   County Defendants' counsel to pay $100.00 in sanctions.

14        Sanctions shall be paid to the Clerk of the Court within

15   five days of the date of this Order.

16                          IV.    ORDER

17        For the reasons set forth above, the Court GRANTS WITH LEAVE

18   TO AMEND the County Defendants' motion to dismiss. Plaintiffs

19   shall file their First Amended Complaint within twenty days of

20   this Order.  The County Defendants' responsive pleadings are due

21   twenty days thereafter.

22        IT IS SO ORDERED.

23   Dated: April 30, 2018

24                                   _____
                                     JOHN A. MENDEZ,
25                                   UNITED STATES DISTRICT JUDGE

26

27

28