|  |  |
|---|---|
| TOWN & COUNTRY WEST, GP, et al., | No. 2:17-cv-02231-JAM-AC |
| Plaintiffs, | **ORDER GRANTING DEFENDANT AMY NYGREN'S MOTION TO DISMISS** |
| v. | |
| THE COUNTY OF SACRAMENTO, et al., | |
| Defendants. | |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Plaintiffs Town & Country West, GP (the "Partnership") and Janak Mehtani ("Mehtani") allege Defendants the County of Sacramento (the "County"), Robin Rasmussen ("Rasmussen"), Gregory Stowe ("Stowe"), and Amy Nygren ("Nygren") unlawfully evicted them and their tenants from the mall property they own. Plaintiffs claim Defendants used their failure to comply with fire and safety codes as a pretext for racial and ethnic discrimination. Nygren moves to dismiss all four claims in the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). See Mot., ECF No. 16. Plaintiffs

1

oppose. See Opp., ECF No. 19. For the following reasons, the Court grants Nygren's motion with leave to amend.[1]

I. FACTUAL BACKGROUND

The Partnership is a general partnership that owns the Town & Country West Mall (the "Mall") in Sacramento. Compl., ECF No. 1, ¶ 2. Mehtani is a psychiatrist from India, general partner of the Partnership, and Mall tenant with a medical clinic located on the second floor. Id. ¶ 3. The County employs Rasmussen, a building inspector, and Stowe, a code enforcement officer. Id. ¶¶ 5-7. Nygren works for the Sacramento Metropolitan Fire District (the "Fire District"). Id., Exh. 2; Mem., ECF No. 15-1, at 2.

On July 13, 2017, Nygren inspected vacant portions of the Partnership's Mall property and found two fire code violations, which were corrected later that day. Compl. ¶¶ 22-23. Four days later, on July 17, 2017, some of the County's employees, including Rasmussen, inspected the Shopping Mall. Id. ¶¶ 25-26. At Rasmussen's direction, the County issued several notices of violation ("NOV"). Id. ¶ 29. Plaintiffs claim that, during this inspection, Rasmussen also angrily accused Partnership employee Manzar Quyyum ("Quyyum") of performing unpermitted construction work, causing him to feel threatened and discriminated against because of his Pakistani nationality. See id. ¶¶ 26-27.

The County continued its inspection and issued additional

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for March 27, 2018. In deciding this motion, the Court takes as true all well-pleaded facts in the complaint.

2

NOVs on July 18, 2017. Compl. ¶ 31-32. During the inspection, Stowe noticed a broken strut on the second-floor balcony railing that required evacuating the floor. Id. ¶ 34. When Mehtani was told to evacuate, he sought and was granted a delay in moving his psychiatric patients from the second floor office. Id. ¶ 38-39. Plaintiffs claim the NOVs and evacuation were continuing prejudice against Mehtani and Quyyum based on their Middle Eastern ethnicities and accents. Id. ¶ 40. Plaintiffs also allege that, during the inspection, Stowe repeatedly yelled at Quyyum because of his race and ethnicity. Id. ¶ 33.

The entire Mall (except for a post office) was evacuated after the Fire District and Nygren issued a written correction notice and ordered evacuation on July 19, 2017. Compl. ¶ 45, Ex. 2 (the "Correction Notice"). When Quyyum went to the Fire District to emphasize the need to have tenants return to the building quickly so they would not permanently vacate, Nygren told him that the necessary permits could be issued over the counter. Id. ¶ 48. Plaintiffs allege that this led Quyyum to refrain from filing any administrative appeals regarding the NOVs and evacuations. Id. ¶ 48. Around the same time, the Partnership repaired or adjusted 15-16 sprinkler heads after discovering they were faulty, leading to the lifting of some of the evacuation orders. Id. ¶ 49-a.

In August 2017, the railing was sufficiently repaired and the appropriate permits were issued so that Mehtani was able to reopen his medical clinic and tenants could re-occupy the Mall. See Compl. ¶ 57-58. Because most of the tenants had walked away from their leases, however, the Partnership had to obtain new

tenant permits, even though the new tenants are identical to the previous ones. Id. ¶ 58-60. Plaintiffs allege the County's requirements have impeded their efforts to restore tenant occupancy of the Mall, leading to a decrease in rental income and the fair market value of the property. See id. ¶¶ 61-62.

## II. OPINION

### A. Procedural Due Process Under The Fourteenth Amendment

Nygren argues that Plaintiffs' procedural due process claim against her fails because the Correction Notice she issued was related to an emergency situation. Mem. at 5-6. The Court Agrees.

Procedural due process imposes constraints on governmental decisions that deprive individuals of liberty or property interests within the meaning of the Due Process Clause Of The Fifth or Fourteenth Amendment. Mathews v. Eldridge, 424 U.S. 319 (1976). Due process is flexible and calls for procedural protections as the particular situation demands. Id. (internal citation and quotation marks omitted).

But summary governmental action taken in emergencies and designed to protect the public health, safety, and general welfare does not violate due process. Walnut Hill Estate Enters., LLC v. City of Oroville, No. 08-cv-01142, 2009 WL 3781038, at *10 (E.D. Cal. Nov. 10, 2009) (citing Armendariz v. Penman, 31 F.3d 860, 866 (9th Cir. 1994)) (internal quotation marks omitted). Further, states have traditionally been given great leeway in adopting summary procedures to protect public health and safety. Id. (citing Mackey v. Montrym, 443 U.S. 1, 17

1  (1979)) (internal quotation marks omitted).  Because government
2  officials must act promptly and decisively in emergency
3  situations, no pre-deprivation process is due.  Id. (citing
4  Sinaloa Lake Owners v. City of Simi Valley, 882 F.2d 1398, 1406
5  (9th Cir. 1989), overruled on other grounds in Armendariz v.
6  Penman, 75 F.3d 1311, 1325 (9th Cir. 1996)).
7       Here, Plaintiffs claim the Correction Notice issued by
8  Nygren and the fire and life safety issues therein were a pretext
9  to issue evacuation orders on the Partnership's property.  See
10 Opp. at 11; Compl. at ¶ 46.  But, as Nygren points out,
11 Plaintiffs conceded their building had faulty sprinkler heads and
12 a faulty second-floor guardrail.  Reply at 3-4 (citing Compl.,
13 ¶¶ 49; 57-58).  Plaintiffs nonetheless contend in a conclusory
14 fashion that there were no life safety issues.  Opp. at 11.  This
15 conclusory allegation is an unwarranted inference that the Court
16 need not, and does not, accept as true for purposes of this
17 motion to dismiss.  See Pareto v. FDIC, 139 F.3d 696, 699 (9th
18 Cir. 1998).  The Fire Department's decision to evacuate the
19 entire building, on the other hand, is supported by the safety
20 issues caused by the faulty sprinkler system and guardrail and
21 the common sense conclusion that a fire starting in one area of
22 the building is a risk of fire to the whole building.  See Mem.
23 at 6.
24      Because Nygren and the Fire Department were taking actions
25 they felt necessary to protect the safety of the public in a
26 perceived emergency situation, they were not obligated to provide
27 any pre-deprivation process to Defendants.  See Walnut Hill
28 Estate Enters., LLC, 2009 WL 3781038, at *10.  Accordingly, the

Court finds Plaintiffs fail to state a plausible procedural due process claim against Nygren.

   B.   Denial Of Equal Protection

Plaintiffs contend Defendants violated Plaintiffs' equal protection rights because Rasmussen and Stowe were prejudiced against Plaintiffs based on their employees being from Middle Eastern countries and having Middle Eastern accents. See Opp. at 13-14. Plaintiffs claim this prejudice is shown by Stowe yelling at Quyyum and Mehtani and there being no incidents at their building before the immediate one. See id. The Court does not find plausible facts showing signs of the prejudice Plaintiffs allege, especially on the part of Nygren.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall deny to any person within its jurisdiction the equal protection of the laws and that all persons similarly situated should be treated alike. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985), superseded by statute on other grounds, (internal citation and quotation marks omitted). To state a claim for a violation of the Equal Protection Clause, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class. Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), overruled on other grounds.

Here, Plaintiffs have not alleged any facts showing Nygren treated them differently than others similarly situated or that she acted with an intent or purpose to discriminate against Plaintiffs. See Compl. Plaintiffs have only alleged in a

conclusory manner that "a class of many, including the partnership, and each tenant including Dr. Mehtani" have had "everything" taken from them through an intentional and arbitrary action. Opp. at 14. Plaintiffs cite Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) to argue that their allegations support a valid equal protection claim. Plaintiffs' reliance on Vill. of Willowbrook is misplaced.

In Vill. of Willowbrook, the Supreme Court ruled that the plaintiff could bring an equal protection claim because she had alleged that the defendant demanded a 33-foot easement in connection with her property where it only demanded 15-foot easements from other similarly situated property owners. 528 U.S. at 564-65. The Court did not reach whether a valid claim arose from the type of "subjective ill will" that Plaintiffs allege here. Id. at 565. Vill of Willowbrook does not support a finding that a valid equal protection claim arises from Plaintiffs' conclusory allegations. The Court grants Nygren's motion to dismiss Plaintiffs' equal protection claim against her.

    C.    Discrimination Based On Race And Ethnicity

Plaintiff Mehtani alleges Nygren has also violated the Equal Protection Clause and 42 U.S.C. §§ 1981 and 1983 by discriminating against him on the basis of his race and ethnicity. See Compl. ¶¶ 82-92.

To show a violation of the Equal Protection Clause because of discrimination based on race or ethnicity, a plaintiff must factually allege discriminatory intent or purpose. Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265

(1977). Further, 42 U.S.C. § 1981 can be violated only by intentional discrimination. <u>Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania</u>, 458 U.S. 375, 391 (1982).

The Complaint contains no factual allegations that Nygren intentionally discriminated against Mehtani. <u>See</u> Compl.[2] His discrimination claim against her fails and must be dismissed.

D. <u>Unlawful Search and Seizure</u>

Plaintiffs contend "Defendants" violated their Fourth Amendment rights to be free from unreasonable search and seizure by searching the entirety of the Partnership's mall property without justification and by forcibly evicting all of the Partnership's tenants. Compl. ¶¶ 98-103. But Plaintiffs only allege that Rasmussen committed an unlawful search via the July 17, 2017 and July 18, 2017 inspections. Compl. ¶¶ 30-31. Plaintiffs have failed to allege any facts indicating Nygren committed an unlawful search. <u>See</u> Compl. The Court finds Plaintiffs lack a valid claim against Nygren for violating their right to be free from an unlawful search.

Plaintiffs' claim against Nygren for unlawful seizure also fails because they have provided no authority suggesting that eviction from a commercial shopping mall constitutes an unlawful seizure.

Because Plaintiffs have failed to provide sufficient facts to support an unlawful search and seizure claim against Nygren,

---

[2] As explained below in the Court's sanctions ruling, the Court has not considered Plaintiffs' arguments with respect to this claim and the fourth claim given that they begin on page sixteen of the opposition brief. In following its Order re Filing Requirements, the Court has not considered any arguments made after page fifteen of the opposition brief.

8

it must be dismissed.

    E.    <u>Leave to Amend</u>

Courts dismissing claims under Federal Rule of Civil Procedure 12(b)(6) have discretion to permit amendment, and there is a strong presumption in favor of leave to amend. <u>Eminence Cap., LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1051-52 (9th Cir. 2003). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear. . . that the complaint could not be saved by amendment." <u>Id.</u> at 1052 (internal citation omitted).

The Court is not convinced that further amendment would be futile and will give Plaintiffs another opportunity to try to plead legally sufficient claims against Nygren.

### III.    SANCTIONS

The Court issued its Order re Filing Requirements ("Order") on October 25, 2017. ECF No. 3-2. The Order limits memoranda in support of and in opposition to motions to dismiss to fifteen pages and reply memoranda in support of motions to dismiss to five pages. The Order also states that an attorney who exceeds the page limits must pay monetary sanctions of $50.00 per page and that the Court will not consider any arguments made past the page limit.

Plaintiffs' opposition memorandum exceeds the page limit by four pages. The Court has not considered any arguments made after page fifteen of the opposition brief. The Court ORDERS Plaintiffs' counsel to pay $200.00 in sanctions.

///

Nygren's reply memorandum exceeds the page limit by six pages. The Court has not considered any arguments made after page five of the reply brief. The Court ORDERS Nygren's counsel to pay $300.00 in sanctions.

Sanctions shall be paid to the Clerk of the Court within five days of the date of this Order.

## IV. ORDER

For the reasons set forth above, the Court GRANTS WITH LEAVE TO AMEND Nygren's motion to dismiss. Plaintiffs' amended complaint shall be filed by May 21, 2018. Nygren's responsive pleading is due twenty days thereafter.

IT IS SO ORDERED.

Dated: May 1, 2018

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE